IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOSHUA M.,[1]<br><br>   Plaintiff,<br> v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>   Defendant. | Case No.: 3:22-cv-01233-AN<br><br>OPINION AND ORDER |

   Joshua M. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

## BACKGROUND

### I. Plaintiff's Application

   Plaintiff was born in June 1992, making him twenty-six years old on his alleged onset date of May 20, 2019. Tr. 204. Plaintiff received his GED and has no past relevant work experience. Tr. 29, 43. In his applications, Plaintiff alleges disability due to blindness in his left eye, knee locking disorder, depression, anxiety, and bipolar type 1 disorder. Tr. 209.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

The Commissioner denied Plaintiff's applications initially and upon reconsideration. Tr. 57-87. On May 20, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 36-56. On July 29, 2021, the ALJ issued a written opinion, finding Plaintiff not disabled. Tr. 15-31. The Appeals Council denied review. Tr. 1. Plaintiff now seeks judicial review of the ALJ's decision.

## II.     Sequential Disability Evaluation

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

### III.     The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 20, 2019. Tr. 17. At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: medial meniscus tear, major depressive disorder, bipolar disorder, and attention deficit hyperactivity disorder. Tr. 18. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. *Id.* The ALJ then concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with the following limitations:

> [H]e can occasionally kneel and crawl. He can do simple, routine, repetitive tasks with a reasoning level of one to two and with short, simple instructions. He can have occasional, superficial public contact. He should have no exposure to hazards.

Tr. 20. Because Plaintiff had no past relevant work, the ALJ moved to step five. Tr. 29. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Hand Packager (DOT# 920.587-018), medium, unskilled (SVP 2), 110,000 jobs available"; "Cleaner II (DOT# 919.687-014), medium, unskilled (SVP 1), 86,000 jobs available); and "Cleaner, Laboratory Equipment (DOT# 381.687-022), medium, unskilled (SVP 2), 42,000 jobs available." Tr. 30. Therefore, the ALJ concluded that Plaintiff is not disabled.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a

3

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ improperly rejected the medical opinion of Phillip Freneau, QMPH, and in rejecting the opinion, the ALJ failed consider the medical opinion as a whole. As explained below, the Court finds that the ALJ's decision is free of harmful legal error and supported by substantial evidence in the record.

**I.     Applicable Law**

Plaintiff filed his applications for benefits after March 27, 2017, therefore the current regulations apply. *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citing 82 Fed. Reg. 5844, at *5867-68 (Jan. 18, 2017)) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence."). Under the revised regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. §§ 404.1529c(a), 416.920c(a). Instead, the ALJ considers several factors: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§

404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important factors in the evaluation process are supportability and consistency." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Using these factors, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each medical provider. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

## II.    Analysis

Plaintiff began seeing medical providers at Sequoia Mental Health Services in November 2018. Tr. 565. He saw Zoe Zielinksi LPC, QMHP, from July 2019 through December 2020, and Dr. Thomas Welch from December 2019 through March 2021. *See, e.g.*, Tr. 583, 589, 593, 612, 625, 687, 690, 708. Although he was a provider at Sequoia, Plaintiff met with Freneau only once on March 11, 2021, prior to Freneau completing the medical opinion.[2] Tr. 669, 720.

As relevant to Plaintiff's argument, on May 21, 2021, Freneau completed a questionnaire and opined that Plaintiff was markedly limited in his ability to (1) interact with others; (2) work in coordination with or proximity to others without being distracted by them; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) get along with coworkers or peers without distracting them or exhibiting extreme behaviors. *Id.* Freneau stated it was "too early in [therapy] to assess" Plaintiff's ability to adapt or mange himself. *Id.*

---

[2] There are references to Freneau leading family sessions with Plaintiff and his mother, Tr. 669, but those sessions are not part of this record.

He also opined that Plaintiff's "attention and concentration would be impaired" ten percent of a standard workweek to the point that he could "not be expected to perform even simple work tasks." Tr. 724.

The ALJ found Freneau's opinion "not persuasive." Tr. 28. Specifically, the ALJ noted that Freneau "began treating the claimant on March 2, 2021, and he has indicated that it is too early to assess some of the claimant's limitations, both of which reduce the probative value of his opinion." *Id.* The ALJ also noted that Freneau's opinions about Plaintiff's limitations were not supported either by his own notes or the record as a whole. *Id.*

First, Freneau's limited relationship with Plaintiff is a specific and legitimate reason for discounting the medical opinion. *See Woods*, 32 F.4th at 792 ("The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion.").

Next, turning to the "most important" factors of supportability and consistency, the ALJ's rationale that Freneau's opinion was not supported by his own notes is also supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("A conflict between a treating physician's medical opinion and his own notes is a clear and convincing reason for not relying on the doctor's opinion, and therefore is also a specific and legitimate reason for rejecting it.") (quotation marks omitted). In his treatment notes, Freneau noted that Plaintiff wanted to "continue to work on his 'rambling' so that he can maintain friendships," and that Plaintiff was aware that "his reactions to others' can sometimes be unkind and he would like to control his behavior toward others by learning to improve his 'reactions.'" Tr. 669. Plaintiff also reported that "he has many friends" and that "he would like to be able to start work part-time next month." *Id.* As the ALJ noted, Plaintiff's interactions with friends, others, and his

desire to work, is inconsistent with Freneau's assessment that Plaintiff has marked limitations in interacting with others.

The ALJ's rationale that Freneau's opinion was inconsistent with the medical record is also supported by substantial evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (explaining that inconsistency with medical records qualifies as a legitimate reason to discount a treating medical source opinion). At the time of the hearing, Plaintiff was living in a group home with ten other men and had been consistently involved in his boxing and mixed martial arts community, which is also inconsistent with Freneau's assessment that Plaintiff has marked limitations in interacting with others. Tr. 42, 589, 612, 614, 669, 674. Moreover, after his last hospitalization in May 2020, Plaintiff's mental health began improving. He was regularly described by his medical providers as acting in congruence with his mood, having improved conversation skills, and a calmer demeanor. *See, e.g.*, Tr. 714 (Plaintiff "sounded more calm than he has in recent conversations"); 689 ("His speech was not pressured. His mood was 'anxious,' and his affect was somewhat expansive. His thought process was circumstantial. He did not express delusional ideas or suicidal or homicidal ideation."); 688 ("His speech was spontaneous and of regular rate, rhythm, and volume. His mood was anxious, and his affect was somewhat anxious."); 687 ("His speech was spontaneous and of regular rate, rhythm, and volume. His mood was 'pretty good,' and his effect seemed euthymic. His thought process was generally sequential."). Such findings are inconsistent with Freneau's assessment that Plaintiff would be markedly limited in interacting with others. In sum, the ALJ did not err in her assessment of Freneau's medical opinion.

Finally, Plaintiff argues that the ALJ failed to address all of Freneau's opinion, specifically Freneau's opinion that Plaintiff would be incapable of performing simple work tasks

for at least ten percent of a workday. Pl.'s Br. at 9 (ECF No. 14). The Court is not aware of any authority, nor does Plaintiff cite any, that requires the ALJ to address each separate part of a medical opinion. To the contrary, all that is required of the ALJ is to "articulate how [she] considered the medical opinions" according to the listed factors. 20 C.F.R. § 404.1520c(a); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.") (citations and quotation marks omitted). The ALJ did just that here.

Even assuming the ALJ was required to do so and failure to do so was an error, any error was harmless. *See Tommasetti*, 533 F.3d at 1038 ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (quotation marks and citations omitted). The ALJ offered specific and legitimate rationales for finding Freneau's opinion not persuasive, these rationales were supported by substantial evidence, and such rationales apply equally to Freneau's opinion that Plaintiff would be off task ten percent of the day as they do to the other opinions directly commented on by the ALJ. As such, the ALJ's failure to specifically address each portion of the medical opinion was inconsequential to her ultimate determination.

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is AFIRMED.

IT IS SO ORDERED.

DATED this 24th day of August, 2023.

_____
Adrienne Nelson
United States District Judge